

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

NORMAN ABBOTT
and DINAH ABBOTT,

    Plaintiffs,

v.                              Civil Action No. 3:08cv665

SUNTRUST MORTGAGE, INC.,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on the Show Cause Order issued to the Plaintiffs, Norman and Dinah Abbott, on January 15, 2009 (Docket Number 33) and on SUNTRUST MORTGAGE, INC.'S MOTION FOR LEAVE TO FILE MOTION TO STRIKE FILINGS OF PLAINTIFFS AFTER ENTRY OF ORDER PROHIBITING FURTHER ACTIVITY AND FOR ATTORNEYS' FEES PURSUANT TO 28 U.S.C. § 1927 (Docket Number 27). The Show Cause Order issued by the Court ordered the Abbotts to show cause why they should not be sanctioned under Fed. R. Civ. P. 11 for their frivolous filings and bad faith conduct in this litigation.

The Defendant's motion requested, <u>inter alia</u>, an award of attorneys' fees under 28 U.S.C. § 1927, which provides for the payment of those fees in certain circumstances. (Def. Mem. at

1.) The Court previously ordered further briefing on this topic because of the current circuit split respecting the applicability of that statute to pro se litigants. (See Order (Docket Number 33), January 15, 2009.) For the reasons set forth below, SunTrust's motion for attorney's fees will be denied, but the Court will issue sanctions under Fed. R. Civ. P. 11.

## I. BACKGROUND

On July 7, 2006, the Abbotts obtained a $359,000 loan for the purpose of purchasing property located at 3409 Eagles Roost, Richmond, Virginia ("the Property"). That loan was secured by a deed of trust on the Property, which, inter alia, provided that the trustee could foreclose on and sell the Property if the Abbotts defaulted on the loan. SunTrust demonstrated that the Abbotts defaulted on the loan and, as a result, SunTrust thereafter foreclosed on and auctioned the Property. (Def. Supp. Br. at 1-2.) SunTrust purchased the Property at the foreclosure sale and thereafter requested that the Abbotts vacate the Property. (Id. at 2.) The Abbotts' petition tends to confirm all of those facts.

On September 20, 2007, after their default on the loan, but before the foreclosure, the Abbotts filed a voluntary bankruptcy petition in the Eastern District of Virginia. The Bankruptcy

Court ultimately dismissed the Abbotts' petition with prejudice on the basis that the Abbotts: (1) did not furnish any evidence in support of their claims respecting the status of their debt; (2) had refused to file a confirmable plan; and (3) had acted in bad faith. See In re Abbott, 2008 WL 782859, *1, 3:08CV086 (E.D.Va. 2008) (Hudson, J.). The Bankruptcy Court also enjoined the Abbotts from filing any further bankruptcy petitions for 180 days. Id. On the Abbotts' appeal, the District Court upheld the Bankruptcy Court's dismissal of the petition and the injunction. Id. at *3.

On October 14, 2008, the Abbotts initiated this action by filing a Petition for a Writ of Mandamus in which they contended that SunTrust had:

> violated IRS laws by not processing IRS forms1099 [sic] OID and 1040V . . . [v]iolated 28 USC 2041 [sic] by not depositing bonds forthwith to the US TREASURY DEPT . . . [and have] violated the Fair Debt Collection Practices Act title 15 by not complying with those laws.

(Pl. Pet. at 1-2.) The petition does not connect these alleged violations with the underlying relationship between the parties, nor does it allege any facts that might support the violations alleged.

For the reasons set forth in the Order of November 17, 2008 (Docket No. 15), the Abbotts' Petition for a Writ of Mandamus

was treated as a complaint. By Order entered on January 15, 2009 (Docket No. 32), the complaint was dismissed with prejudice for failure to state a claim upon which relief could be granted. (See Docket Number 15.) As discussed below and in the Memorandum Opinion issued on January 15, 2009 (Docket No. 31), the allegations of the complaint are entirely baseless. The Abbotts sought to bolster the complaint offering the following documents in support of their claim:

- Two completed IRS tax forms (1099-OID and 1040V) with no apparent relevance to the underlying relationship between the parties (Pl. Pet. Ex. A.)

- A "promissory note" allegedly issued to SunTrust in the amount of $407,511.37 (Id. at Ex. B.)

- A document purporting to be a "certified promissory note" in the amount of $407,511.37 allegedly issued to SunTrust by the Abbotts in full satisfaction of the mortgage debt (Id. at Ex. C.)

- A letter from Mr. Abbott to Henry Paulson, Secretary of the Treasury, demanding "set off" and requesting that he order SunTrust to release Abbott from the loan (Id. at Ex. D.)

- A document apparently prepared by the Abbotts and labeled a "Bonded Promissory Note" indicating that the Abbotts' debt should be satisfied by payments from Henry Paulson, the Secretary of the Treasury (Id. at Ex. E.)

- Several dozen pages of largely incomprehensible self-made legal documents produced by the Abbotts that were attached to a copy of the proof of claim filed by SunTrust in the bankruptcy proceedings (Id. at Ex. F.)

The Abbotts also filed a document, referenced in Ex. F. above, that purported to establish them as "Absolute Sovereign Neutral[s] *in intinere*" who supposedly are not subject to various laws of the United States, including any that would render them a "debtor." The document further asserts that any violation of its terms should result in an award of $10 million to the Abbotts (Pl. Motion for Leave of Court to Compel Production of Answers to Writ of Mandamus and All Virginia Codes at Ex.)[1] The assertion of sovereignty is plainly frivolous.

The frivolous filings and bad faith conduct detailed above are not the full extent of the Abbotts' actions. In this action alone, the Abbotts have made various post-complaint filings frivolously and baselessly accusing SunTrust of, inter alia, perjury, criminal securities fraud, violations of the Virginia state bonding code, and high treason. (See Pl. Motion for Leave of Court to Compel Production of Answers to Writ of Mandamus and All Virginia Codes at 1-2 (Docket Number 10); Pl. Motion for Order to Show Cause at 1-2 (Docket Number 22).) Additionally, demonstrating a lack of regard for the orders of the Court, the Abbotts filed nine so-called "Motions" after the Court's order

---

[1] It is worth noting that this is essentially the same claim upon which the Abbotts previously relied in the Bankruptcy Court and which was denied both by the Bankruptcy Court and by Judge Hudson on appeal. See Abbott, 2008 WL 782859, *1.

staying this action, including duplicative motions inappropriately seeking a default judgment and a motion seeking $20,000,000 in damages for alleged bad faith and criminal conduct on the part of SunTrust. (Docket Numbers 19, 20, 22-26, 29.) Those motions were filed with no factual support, and contained innumerable inappropriate, inapposite, and incorrect citations to various sections of the United States and Virginia Codes.[2]

Furthermore, after this Court ordered the Abbotts to respond in writing to the Court's Show Cause Order of January 15, 2009, the Abbotts failed to do so. The Abbotts did, however, file two completely meritless "Motion[s] to Vacate Void Judgment;" both of which were denied by the Court. (Docket Numbers 35, 38.) Finally, the Abbotts have filed two "Notices," which the Court has indicated it will consider as a Motion for Recusal, accusing the Court, General District Court Judge John Marshall, and SunTrust's Karen Smith, of committing felonies. (Notice (Docket Number 41) at 1-2; Notice (Docket Number 42) at

---

[2] The Abbotts also have filed at least two other entirely frivolous actions in this Court, including one, dismissed by Judge Hudson, seeking damages against two Secret Service agents for failing to accept one of Norman Abbott's self-concocted Treasury documents. (See Civil Action Nos. 3:07-cv-381, 3:08-cv-583.)

1.) Those recusal related Notices are resolved by separate order and opinion.

In response to that conduct, SunTrust has, reasonably, filed a motion for attorneys' fees and to strike pleadings filed by the Abbotts after the Court stayed further proceedings pending resolution of SunTrust's motion to dismiss the complaint. (See Def. Mot. (Docket Number 27) at 1.) In its motion, SunTrust requested attorneys' fees under the statutory authority of 28 U.S.C. § 1927. (Id.) The Court recognized the current split of authority concerning the applicability of that statute to pro se litigants, and therefore ordered further briefing. (Order (Docket Number 33), January 15, 2009.)

SunTrust has provided the requested briefing and has reiterated its request for attorneys' fees and other sanctions in its response to the Court's Show Cause Order. (Def. Resp. (Docket Number 39) at 3.) SunTrust also provided evidence indicating that the Abbotts' pattern of behavior extends beyond federal court and into state General District Court. (Id. at Ex. 3.)

For the reasons set forth below, the Court will enter monetary sanctions and a pre-filing injunction against the Abbotts, but will deny SunTrust's motion for attorneys' fees under 28 U.S.C. § 1927.

## II. DISCUSSION

### A. Rule 11 Sanctions

Fed. R. Civ. P. 11 sets forth the requirements imposed on individuals filing documents in a federal court, the available sanctions for failing to meet those requirements, and the procedural mechanisms for imposing those sanctions. By its terms, Fed. R. Civ. P. 11 applies to both attorneys and *pro se* litigants. By signing a document presented to the Court, the signatory is representing that the document:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). A court may impose sanctions for a violation of Fed. R. Civ. P. 11(b) if, after notice and a hearing, it determines that the party that violated the

rule was responsible for the violation. Id. at (c)(1). A court may impose a sanction of

> nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorneys' fees and other expenses directly resulting from the violation.

Id. at (c)(4).[3]

The Fourth Circuit has stated that documents potentially violating Fed. R. Civ. P. 11(b) should be evaluated using an objective standard. See Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 153 (4th Cir. 2002). The assertion of a position violates Fed. R. Civ. P. 11(b) if it has "absolutely no chance of success under the existing precedent." Id. (internal quotations omitted). The rule is not, however, designed to stifle creativity - it is solely intended to prevent the filing of frivolous claims with no factual or legal support. See id. Where the law could colorably support a claim, finding a Rule 11(b) violation is appropriate where there is no factual support for the asserted claims. See id. at 156; accord Edmonds v.

---

[3] While Fed. R. Civ. P. 11(c)(1)(A) provides a "safe harbor" period during which litigants can withdraw allegedly sanctionable pleadings, this period does not apply when a court proposes to impose sanctions sua sponte. See Brickwood Contractors, Inc. v. Datanet Engineering, Inc., 369 F.3d 385, 389 (4th Cir. 2004).

Gilmore, 988 F.Supp. 948, 956-57 (E.D. Va. 1997). Litigants proceeding pro se are liable for sanctions under Fed. R. Civ. P. 11(b) for filing frivolous pleadings when those pleadings lack any factual support. See Potter v. Mosteller, 199 F.R.D. 181, 186-87 (D.S.C. 2000) (finding attorneys' fees an appropriate sanction for frivolous pleadings by pro se litigants).

Under this objective standard, it is clear that the following pleadings were entirely frivolous and were filed for improper purposes:

- the complaint (Petition for a Writ of Mandamus)
- exhibits A, B, C, D and E to the complaint and the documents in exhibit F that obviously are created by the Abbotts
- the assertion of sovereignty
- the motion filed by the Abbotts seeking default judgment and $20 million in damages (Docket Nos. 19, 20, 22-26 and 20 in this case)
- the motions to vacate void judgments (Docket No. 35 and 38 in this case)
- the two Notices (Docket Nos. 41 and 42)

None of the Abbotts' motions contains any indication of apposite legal support; many of their claims were clearly and directly barred by applicable law. (See generally Mem. Op., Jan. 15, 2009.) Beyond the claims put forth in their complaint, the Abbotts have raised a variety of unsupported and, frankly,

meritless claims against SunTrust. See Section I., supra. In addition to lacking legal support, the purported factual basis for the motions enumerated above and the claims against SunTrust were self-fabricated documents concocted by the Abbotts raising a variety of unsupported and baseless allegations, including the fact, inter alia, that the Abbotts were sovereign nations. See id.

Pro se litigants are undoubtedly to be afforded some leniency in the construction of their pleadings. See Edmonds, 988 F.Supp. at 957 (pro se status should be considered in deciding upon whether sanctions are appropriate). No amount of permissible leniency, however, can excuse the baseless pleadings filed by the Abbotts.

In addition to the frivolity of their pleadings, it is also apparent that the Abbotts' have been conducting this lawsuit, and have engaged in their course of conduct toward SunTrust in general, for an improper purpose. "An improper purpose may be shown by excessive persistence in pursuing a claim or defense in the face of repeated adverse rulings." Lewin v. Cooke, 95 F.Supp.2d 513, 527 (E.D.Va. 2000) (internal quotations omitted). The Abbotts have been instructed numerous times in this action, by Judge Hudson, and by General District Court Judge Marshall, that their claims against SunTrust are frivolous, or are based

on inoperative documents. See Section I, supra; (Def. Resp. at Ex. 3, pp. 6-9.) Notwithstanding that the Abbotts have been thusly advised, they have continued to pursue these claims against SunTrust. This dogged and irrational pursuit of claims that the Abbotts certainly know to be frivolous reflects an intent to harass SunTrust in an attempt to vindicate their self-perceived, but baseless rights. Hence, on this record, sanctions are appropriate under Fed. R. Civ. P. 11(b)(1). See Hunter, 281 F.3d at 151 (sua sponte sanctions appropriate in same contexts as citations for contempt of court).

It being clear that a violation of Fed. R. Civ. P. 11(b) has occurred; the next step is to determine what sanctions are appropriate. The purpose of sanctions under Fed. R. Civ. P. 11 is not to compensate a wronged party, but, rather, to deter future litigation abuse. See id. at 151 (citing In re Kunstler, 914 F.2d 505, 522 (4th Cir. 1990)). The court should impose the minimum sanctions necessary to deter such abuse, but sanctions should be sufficient to serve the purposes of Fed. R. Civ. P. 11. Kunstler, 914 F.2d at 522. If a court issues a monetary sanction, it must be in an amount appropriate to reflect this primary purpose of deterrence. See id. In deciding upon the appropriateness of a monetary sanction, the court should consider "(1) the reasonableness of the opposing party's

attorneys' fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the Rule 11 violation." Id. at 523.

As explained above, the several violations of Rule 11 by the Abbotts were quite serious indeed and those violations were committed deliberately and with the reasonable expectation that SunTrust would be required to defend itself and incur expense in so doing. The quantum of attorneys' fees disclosed at the show cause hearing[4] was quite reasonable in amount given the pleadings filed by SunTrust in response to the Abbotts' frivolous pleadings. The Abbotts have made no showing respecting their ability to pay attorneys' fees. However, the record reflects that they suffered a foreclosure of their residence, thereby suggesting, while not proving, an inability to keep up with the mortgage payments.[5]

On balance, an assessment of a modest amount of attorneys' fees under Rule 11 is an appropriate sanction to help deter the filing of future pleadings that reasonably can be expected to

---

[4] At the hearing held on SunTrust's motion for attorneys' fees, the amount of fees incurred to date dealing with the barrage of Abbott filings was estimated to be approximately $6000.

[5] Of course, there are other possible explanations for non-payment, but logic suggests that one would not suffer foreclosure of a primary residence if one could afford to pay. It must be noted, as well, that, as shown by the pleadings in this case, the Abbotts are not always governed by logic.

-13-

cause others to incur legal expense. Considering all the appropriate factors, it is appropriate to impose on the Abbotts a sanction requiring them, jointly and severally, to pay to SunTrust the sum of $1,000.00, as part of the fees and expense incurred by SunTrust as a result of the Abbotts' violation of Rule 11.

It also is appropriate to issue a nonmonetary sanction when such a sanction is necessary to deter future litigation abuse. See Mazur v. Woodson, 191 F.Supp.2d 676, 684 (E.D.Va. 2002). Multiplicitous, frivolous lawsuits filed against the same defendant are an appropriate basis for a pre-filing injunction that enjoins the plaintiffs from filing further such suits. See id. Indeed, a pre-filing injunction is appropriate when necessary to prevent any further frivolous litigation. See Lewin, 95 F.Supp.2d at 528 (citing Brock v. Angelone, 105 F.3d 952, 954 (4th Cir. 1997)). In issuing a pre-filing injunction, a court should consider:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and 5) whether other

>sanctions would be adequate to protect the courts and other parties.

United States v. Hollar, 885 F.Supp. 822, 825 (M.D.N.C. 1995) (quoting Safir v. United States Lines, Inc., 792 F.2d 19, 24 (2nd Cir. 1986)).

Application of these factors shows that a pre-filing injunction against the Abbotts is appropriate. The Abbotts certainly have a history of harassing and duplicative lawsuits, and their repeated meritless filings unnecessarily increase the cost of litigation for the other side. See Section I, supra. Furthermore, as discussed above, the Abbotts have evinced bad faith throughout their litigation history, as demonstrated by their continued assertion of meritless claims, notwithstanding having been informed that the claims lack any merit. See id. Monetary sanctions, while appropriate, are insufficient, acting alone, to deter the Abbotts from future litigation abuse. See Kunstler, 914 F.2d at 523. Indeed, the only factor in the Abbotts' favor is that they are unrepresented. See Hollar, 885 F.Supp. at 825. A pre-filing injunction against the Abbotts is therefore appropriate as an adjunct to the monetary sanction.

First, the injunction will prohibit the Abbotts, jointly and severally, from filing any action or further pleading in the Eastern District of Virginia involving the subject matter of

this action, except a notice of appeal herein. Second, the Abbotts will be prohibited from filing any action or pleading of any kind in the United States District Court for the Eastern District of Virginia until they show proof that they have paid to SunTrust the $1,000.00 monetary sanction imposed above.[6] Third, even after that monetary sanction is satisfied, if the Abbotts wish to initiate or pursue any further litigation on any subject matter, they must first submit to the Clerk of the Court an "Application for Leave to File Suit in the United States District Court for the Eastern District of Virginia," along with a copy of the order imposing the pre-filing injunction and a copy of any proposed complaint or pleading; and, accompanying the "Application for Leave to File Suit in the United States District Court for the Eastern District of Virginia," the Abbotts must attach a separate and notarized declaration or affidavit certifying that the matters raised in the new filing have not before been raised or disposed of on the merits in either state or federal court. The Court will then review the Abbotts proposed filing and decide whether that filing will be permitted.

---

[6] See e.g., In re Vincent, 105 F.3d 943, 945-46 (4th Cir. 1997); Mazur, 1917 F.Supp.2d at 684.

## B. Statutory Sanctions

SunTrust has also moved for attorneys' fees under the statutory authority granted by 28 U.S.C. § 1927. 28 U.S.C. § 1927 provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

As previously explained, there is currently a split of authority concerning whether this statute is applicable to pro se litigants. (See Order entered Jan. 15, 2009 (Docket Number 33).) The Supreme Court has not ruled on the issue, nor has the Fourth Circuit Court of Appeals, nor has any court in the Eastern District of Virginia. However, two district courts within the Fourth Circuit have addressed the issue, and have reached opposite conclusions. See Balcar v. Bell and Assoc., LLC, 295 F.Supp.2d 635, 639-40 (N.D.W.Va. 2003) (citing Sassower v. Field, 973 F.2d 75 (2d Cir. 1992) (28 U.S.C. § 1927 does not apply to pro se litigants) contra Summerville v. Local 77, 2008 WL 3983118, *6 n.2 (M.D.N.C. 2008) (unreported) (in dicta).

There are, in fact, very few cases assessing the issue. See Institute for Motivational Living, Inc. v. Doulos Institute for

-17-

Strategic Consulting, Inc., 110 Fed. Appx. 283, 286 (3d Cir. 2004)(noting the split and the ambiguous statutory language, and declining to state a position); Wallace v. Kelley, 2007 WL 2248105, *3 (D.Neb. 2007) (unreported) (collecting cases). The weight of the decisional law, such as it is, appears to favor the inapplicability of the statute to pro se litigants, with the Fifth and Second Circuits supporting this view; only the Ninth Circuit Court of Appeals appears to firmly hold the contrary position. See Meadowbriar Home for Children, Inc. v. G.B. Gunn, 81 F.3d 521, 535 (5th Cir. 1996); Sassower, 973 F.2d at 80; but see Wages v. I.R.S., 915 F.2d 1230, 1235-36 (9th Cir. 1990), cert. denied, 498 U.S. 1096, 111 S.Ct. 986, 112 L.Ed.2d 1071 (1991).

The decision which affords the most substantive attention to this issue was Sassower. See 973 F.2d at 80. In Sassower, the court reasoned that the word "admitted" meant not simply "permitted," as SunTrust would have it, but rather that it connoted a process of application and approval. See id. at 80; (Def. Resp. at 6.).[7] The Second Circuit opined that, because pro

---

[7] SunTrust's assertion that the plain meaning of the statutory language compels its interpretation is unavailing – the statutory language is, at best, ambiguous as to its precise scope. See Institute for Motivational Living, Inc., 110 Fed.Appx. at 286 (describing the language of 28 U.S.C. § 1927 as "in equipoise").

se litigants lack the imprimatur of knowledge and skill, holding them accountable under the statute was inappropriate. See Sassower, 973 F.2d at 80. Additionally, the court noted that an older version of the statute read "any attorney, proctor, or other person admitted." Id. From this statement, it is reasonable to read the statute as applying only to lawyers and lawyer-like individuals tasked with the purpose of legal representation. See id.

Normal methods of statutory interpretation result in a similar answer. For example, in Fed. R. Civ. P. 11, pro se litigants are specifically identified as such, i.e., as "unrepresented parties." 28 U.S.C. § 1927, however, contains no like reference. The two provisions are complementary, so the failure of 28 U.S.C. § 1927 to explicitly refer to pro se litigants is telling. See United States v. Jennings, 496 F.3d 344, 352 (4th Cir. 2007) (statutes on the same subject matter should be read together to determine meaning when ambiguous).

For the foregoing reasons, 28 U.S.C. § 1927 is best read not to apply to pro se litigants, and, therefore, SunTrust's motion for fees under that statute will be denied.

### III. CONCLUSION

For the foregoing reasons, SUNTRUST MORTGAGE, INC.'S MOTION FOR LEAVE TO FILE MOTION TO STRIKE FILINGS OF PLAINTIFFS AFTER ENTRY OF ORDER PROHIBITING FURTHER ACTIVITY AND FOR ATTORNEYS' FEES PURSUANT TO 28 U.S.C. § 1927 (Docket Number 27) will be denied. The Abbotts, however, will be required to pay a monetary sanction in the amount of $1,000.00 to SunTrust. The Clerk of the Court will be instructed not to accept any further filings from the Abbotts without proof that this sanction has been paid in full. Furthermore, the Abbotts will be enjoined as described above.

The Clerk is directed to send a copy of this Memorandum opinion to the plaintiffs.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: April 8, 2009